UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HELENA SHEAR                                              CIVIL ACTION

VERSUS                                                    NO. 20-2436

JOSEPH LOPINTO, SHERIFF AND                               SECTION M (4)
EX OFFICIO TAX COLLECTOR FOR
THE PARISH OF JEFFERSON

**ORDER & REASONS**

Before the Court is a motion by defendant Sheriff Joseph Lopinto, in his official capacity as Sheriff of Jefferson Parish, to dismiss, or alternatively partially dismiss, plaintiff's first amended and superseding complaint, or in the further alternative, to strike certain allegations from the amended complaint.[1] Plaintiff Helena Shear responds in opposition.[2] Having considered the parties memoranda, the record, and the applicable law, the Court denies Sheriff Lopinto's motion.

**I.   BACKGROUND**

This matter concerns constitutional claims arising from an alleged governmental taking of immovable property. On August 3, 2016, the Jefferson Parish Sheriff's Office ("JPSO")[3] held an online auction of properties on which the owners were delinquent in paying their 2015 property taxes.[4] Shear participated in the tax sale, placing the winning bids on four properties: (1) 7600 Westbank Expressway (parcel 0420004248) for $4,812.52; (2) 310 Veterans Boulevard (parcel 0820009840) for $7,687.99; (3) 7021 Airline Drive (parcel 0910011858) for $37,884.05; and (4)

---

[1] R. Doc. 11.
[2] R. Doc. 13.
[3] Newell Normand was the Jefferson Parish Sheriff at the time. R. Doc. 10 at 3.
[4] *Id.* at 3.

2071 Spanish Oaks Drive (parcel 0930009009) for $21,067.12.[5] Shear subsequently notified the JPSO that she wanted to purchase three of the four properties, namely, 7600 Westbank Expressway, 310 Veterans Boulevard, and 7021 Airline Drive.[6] Toward that end, Shear made $50,384.56 in bank funds available for an electronic funds transfer to the JPSO.[7] When the JPSO failed to withdraw the funds, Shear wrote a check for that amount to the JPSO.[8]

On August 11, 2016, the JPSO conveyed to Shear the tax sale titles for each of the three properties she purchased, and on August 16, 2016, the JPSO recorded those tax sale certificates in the Jefferson Parish conveyance records.[9] On those same dates, the JPSO also conveyed to Shear the tax sale title for the Spanish Oaks property and recorded it in the Jefferson Parish conveyance records, even though Shear had informed the JPSO that she did not want to buy the Spanish Oaks property and had not paid for it.[10] After unsuccessful discussions between Shear and the JPSO regarding the Spanish Oaks property, Sheriff Lopinto sued Shear in state court seeking to force Shear to purchase the property's tax sale title.[11] However, Sheriff Lopinto has not pursued the suit since January 2017.[12]

As the tax sale title holder for the Westbank Expressway and Veterans Boulevard properties,[13] Shear received and was responsible for paying the annual tax bills for the two properties.[14] For the tax years 2016 through 2018, Shear paid to the JPSO a total of $13,340.55 in taxes for the Westbank Expressway property and $21,814.13 in taxes for the Veterans Boulevard

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at 3-4.
[8] *Id.* at 4.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Within six months of the tax sale, the original owner of the Airline Drive property redeemed it. Shear alleges that Sheriff Lopinto failed to remit to her, as the tax sale purchaser, the redemption payment. *Id.*
[14] *Id.* at 5.

property.[15] Although Shear also received tax bills for the Spanish Oaks property, she did not pay them, she says, because she never purchased the property, and neither she nor the JPSO considered her to be the valid tax sale title holder.[16]

On August 16, 2019, the three-year redemption period for the Westbank Expressway and Veterans Boulevard properties expired with neither property having been timely redeemed by its original owner.[17] Thus, Shear claims she became the outright owner of both properties under Louisiana law.[18] Nevertheless, on September 12, 2019, without notice to Shear, Sheriff Lopinto allegedly transferred ownership of the Westbank Expressway, Veterans Boulevard, and Spanish Oaks properties to Jefferson Parish by filing in the Jefferson Parish conveyance records "acts of correction" that amended the recorded 2016 tax sales to list Jefferson Parish as the owner of each property.[19] Shear discovered the acts of correction when she checked the conveyance records on her own after she did not receive 2019 tax bills for the Westbank Expressway and Veterans Boulevard properties.[20] Shear subsequently contacted the JPSO and requested a refund of the $35,154.68 she paid in taxes for the two properties for the prior three years, but was allegedly told that her tax payments were being considered a donation.[21]

On September 4, 2020, Shear filed the instant suit against Sheriff Lopinto asserting claims under 28 U.S.C. § 1983 for violations of her Fifth and Fourteenth Amendment rights, along with Louisiana state-law claims for conversion, restoration or recovery for the payment of a thing not owed, and redemption of payment.[22] Sheriff Lopinto moved to dismiss Shear's complaint, arguing

---

[15] *Id.*
[16] *Id.*
[17] *Id.* at 5-6.
[18] *Id.* (citing La. R.S. 47:2121(C)(1)).
[19] *Id.* at 6-7.
[20] *Id.* at 7.
[21] *Id.*
[22] R. Doc. 1.

that her claims were barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, and comity principles that counsel against federal court interference in a state's administration of its tax laws.[23] In response to Sheriff Lopinto's motion to dismiss her original complaint, and with Sheriff Lopinto's consent, Shear filed a first amended and superseding complaint for damages in which she expressly removed "any claim demanding a return of ad valorem property taxes."[24]

In the amended complaint, Shear includes allegations about the underlying facts of the tax sale and subsequent events to demonstrate her ownership of the properties.[25] She asserts two claims under § 1983 for violations of her constitutional rights.[26] First, Shear claims that Sheriff Lopinto violated the Takings Clause of the Fifth Amendment by taking her property without just compensation.[27] Second, Shear claims that Sheriff Lopinto violated the Due Process Clause of the Fourteenth Amendment by taking the property without giving her notice and an opportunity to be heard.[28]

## II. PENDING MOTION

Sheriff Lopinto argues that, despite Shear's express declaration that she has removed her claim for a tax refund from her suit, she still maintains such a claim in paragraphs 18-21, 29, 30, and 35 of the amended complaint, which reference the amount of taxes Shear paid on the properties, and as a result, this Court lacks subject-matter jurisdiction over Shear's suit under the TIA and the comity doctrine.[29] Alternatively, Sheriff Lopinto argues that, if this Court disagrees with his first argument, paragraphs 18-21, 29, 30, and 35 must be stricken from the amended

---

[23] R. Doc. 5.
[24] R. Doc. 10.
[25] *Id.* at 1-7.
[26] *Id.* at 7-9.
[27] *Id.* at 7-8.
[28] *Id.* at 9.
[29] R. Doc. 11-1 at 1-3.

complaint because they are immaterial to Shear's constitutional claims.[30] Finally, Sheriff Lopinto argues that Shear has not stated any claims under § 1983 because she has not alleged that his acts of correction deprived her of any federal right she may have with respect to her ownership of the properties.[31]

In opposition, Shear argues that Sheriff Lopinto's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure must be denied because the amended complaint raises only constitutional claims, not any claims for the return of ad valorem property taxes.[32] She also argues that the allegations in paragraphs 18-21, 29, 30, and 35 should not be stricken under Rule 12(f) because they constitute relevant background facts supporting her constitutional claims.[33] Finally, Shear argues that she has stated constitutional claims for deprivation of property rights and for failure to provide due process.[34]

### III. LAW & ANALYSIS

#### A. The Tax Injunction Act, Comity, and This Court's Subject-Matter Jurisdiction

##### 1. Rule 12(b)(1) standard

Rule 12(b)(1) permits a party to challenge a court's subject-matter jurisdiction. "[A] claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate' the claim." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012)). The party asserting jurisdiction bears the burden of proving that subject-matter jurisdiction exists. *Id.* "Lack of subject matter jurisdiction may be found in any one of

---

[30] *Id.* at 3-4.
[31] *Id.* at 4-7.
[32] R. Doc. 13 at 5-11.
[33] *Id.* at 14-16.
[34] *Id.* at 11-13.

three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 235 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

### 2. Analysis

Sheriff Lopinto argues that this Court lacks subject-matter jurisdiction over this case pursuant to the TIA and the comity doctrine because he believes Shear alleges claims for a tax refund.[35] In opposition, Shear points out that in the amended and superseding complaint, she specifically states that she does not seek a return of ad valorem taxes.[36] She further argues that a return of the taxes is not the remedy for her constitutional claims.[37] Shear contends that the remedy for her takings claim is whatever the jury decides is "just compensation," and the remedy for her due process claim is valid process and related damages in an amount to be determined by the jury.[38] Neither the just compensation nor the damages need be the amount of the taxes paid, but could be measured in other ways depending on the evidence presented at trial.[39]

Pursuant to the TIA, federal courts lack jurisdiction over any suit to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "It applies with full

---

[35] R. Doc. 11-1 at 2-3. Sheriff Lopinto incorporates by reference the arguments he made in his motion to dismiss the original complaint. R. Doc. 5. The Court has considered those arguments.
[36] R. Doc. 13 at 5-7.
[37] *Id.* at 7-11
[38] *Id.*
[39] *Id.*

force to taxes 'imposed by municipalities.'" *Hammonds v. Dallas Cty.*, 815 F. App'x 787, 787 (5th Cir. 2020) (quoting *Home Builder's Ass'n v. City of Madison*, 143 F.3d 1006, 1010 n.6 (5th Cir. 1998)). "The TIA is a broad jurisdictional impediment to federal court interference with the administration of state tax systems." *Id.* (citations and internal quotation marks omitted). Accordingly, the Fifth Circuit has held that "the TIA is not limited to suits directly challenging 'taxes only,' but also extends to the broader activities of assessing, levying, and collecting taxes." *Id.* at 787-88 (citations and internal quotation marks omitted).

The comity doctrine is not jurisdictional, but rather, is a principle that "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010). As explained by the Supreme Court, the doctrine reflects

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.

*Id.* (citations and quotation marks omitted). With this constraint in mind, the Supreme Court has held that comity "has particular force" to claims regarding state taxation schemes. *Id.* at 421-22.

Neither the TIA nor the comity doctrine bars or weighs against this Court's hearing the claims Shear raises in this suit. Shear's amended complaint raises only constitutional claims, not claims regarding the assessment, levy, or collection of any taxes. The allegations concerning the taxes and the tax sale that are included in the amended complaint merely provide background and context for her constitutional claims, including the factual predicate for her alleged ownership of the properties at issue. In particular, Shear's amended complaint takes aim at Sheriff Lopinto's conduct in filing the acts of correction concerning the properties, and the relief she seeks does not call for reshaping any provisions of Louisiana's tax code. As Shear expressly asserts, her

allegations do not constitute a claim for the return of taxes, so the TIA and the comity doctrine do not come into play. *See Freed v. Thomas*, 976 F. 3d 729 (6th Cir. 2020) (holding that neither the TIA nor the comity doctrine precludes a property owner from pursuing in federal court a takings claim not involving the assessment, levy, or collection of taxes but arising in the context of an unrefunded tax payment). Thus, because the TIA does not bar and comity does not discourage this Court's exercise of federal question subject-matter jurisdiction over Shear's § 1983 claims for violations of the Fifth and Fourteenth Amendments, Sheriff Lopinto's Rule 12(b)(1) motion to dismiss must be denied.

### B. Sheriff Lopinto's Motion to Strike

#### 1. Rule 12(f) standard

Rule 12(f) permits a court to strike "from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, this "drastic remedy" should be used "sparingly" and is "disfavored." *Abene v. Jaybar, LLC.*, 802 F. Supp. 2d 716, 723 (E.D. La. 2011) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982), and *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780, 788 (E.D. La. 2010)). If there is any question concerning law or fact, the court should deny the motion. *Perez v. ZTE (USA), Inc.*, 2019 WL 1471011, at *1 (N.D. Tex. Apr. 2, 2019) (citation omitted). A motion to strike is to be used "only when 'the allegations are prejudicial to the defendant or immaterial to the lawsuit.'" *Hi-Tech Elec., Inc. of Del. v. T&B Constr. & Elec. Servs., Inc.*, 2017 WL 6600645, at *1 (E.D. La. Feb. 15, 2017) (quoting *Johnson v. Harvey*, 1998 WL 596745, at *7 (E.D. La. Sept. 8, 1998)). A matter is "immaterial" when it "can have no possible bearing upon the subject matter of the litigation." *Id.* (citation omitted). A matter is "impertinent" when it "consists of statements that do not pertain,

and are not necessary, to the issues in question." *Duplechain v. Neustrom*, 2017 WL 2656196, at *2 (W.D. La. May 2, 2017). A matter is "scandalous" when it "improperly casts a derogatory light on someone, most typically a party to the action." *In re Pioneer Health Servs., Inc.*, 2018 WL 4812432, at *10 (S.D. Miss. Oct. 2, 2018) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed)). In addition, a court may strike allegations which make use of privileged communications. *Sims v. Roux Labs., Inc.*, 2007 WL 2571941, at *1 (E.D. La. Aug. 31, 2007) (citations omitted).

2. **Analysis**

In the alternative, Sheriff Lopinto moves to strike paragraphs 18-21, 29, 30, and 35 from the amended complaint.[40] Each of these paragraphs references the amount of money Shear paid to Sheriff Lopinto for the taxes on the Westbank Expressway and Veterans Boulevard properties.[41] Sheriff Lopinto contends that these allegations pertain to a tax refund claim, not Shear's alleged constitutional claims, and are thus impertinent or immaterial.[42] In that vein, Sheriff Lopinto argues that the Court must strike these allegations if it fails to dismiss the entire action for lack of subject-matter jurisdiction.[43] In opposition, Shear argues that the contested allegations provide useful background information, which makes them material to understanding the factual predicate and legal basis of her constitutional claims.[44]

After considering the entire amended complaint, the Court agrees with Shear. The allegations in paragraphs 18-21, 29, 30, and 35 provide background information that is material to Shear's constitutional claims. Shear's allegations that she paid the 2016, 2017, and 2018 taxes on

---

[40] R. Doc. 11-1 at 3-4.
[41] R. Doc. 10 at 5, 7-8.
[42] R. Doc. 11-1 at 3-4.
[43] *Id.*
[44] R. Doc. 13 at 14-16.

the Westbank Expressway and Veterans Boulevard properties are pertinent to her claim that she acquired ownership of these properties through a tax sale and has acted as owner of the properties since then.  These paragraphs do not comprise a claim for a tax refund, Sheriff Lopinto fails to demonstrate any prejudice from their inclusion, and there is no reason to strike them from the amended complaint.  As such, Sheriff Lopinto's Rule 12(f) motion to strike must be denied.

### C. Shear's Constitutional Claims

#### 1. Rule 12(b)(6) standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v.*

11

*Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### 2. Analysis

Sheriff Lopinto argues that Shear has not stated any claims under § 1983 because she has not alleged the deprivation of a right guaranteed by the Constitution.[45] According to Sheriff Lopinto, the acts of correction he filed did not create or destroy any rights Shear may have had in the properties, and thus she has not alleged any compensable harm because she has not been deprived of possession or use of the properties.[46] Sheriff Lopinto argues that Shear acquired whatever rights she may have in the properties via the tax sale, assuming she paid on her bids, and that the acts of correction would not defeat her ownership.[47] In opposition, Shear argues that the acts of correction interfere with her property rights by encumbering the titles to the properties, which is enough to state a claim under § 1983 for a violation of the Takings Clause.[48] Moreover,

---

[45] R. Doc. 11-1 at 4-7.
[46] *Id.*
[47] *Id.*
[48] R. Doc. 13 at 12-13.

says Shear, Sheriff Lopinto did not argue that any process was afforded to her before the acts of correction were filed, thereby giving her a separate basis for her § 1983 claim.[49]

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States.  42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978).  The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere.  *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999).  To pursue a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[50]  *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 48-50 (1988).

The Takings Clause of the Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.  The Supreme Court has observed that "though the classic taking is a transfer of property to the State or to another private party by eminent domain, the Takings Clause applies to other state actions that achieve the same thing.  Thus, when the government uses its own property in such a way that it destroys private property, it has taken that property."  *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 713 (2010).  "States effect a taking if they recharacterize as public property what was previously private property."  *Id.* (citing *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 163-65 (1980)).

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.

---

[49] *Id.*
[50] Sheriff Lopinto does not advance any arguments regarding the second prong.

13

Procedural due process "requires a two-step analysis: first a court must determine whether the plaintiff has a protected liberty or property interest and then the court must determine whether the state has provided adequate procedures for the vindication of that interest." *Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016) (citing *Wilkinson v. Austin,* 545 U.S. 209, 213 (2005)).

Shear has adequately alleged § 1983 claims for violations of the Takings Clause and the Due Process Clause. She alleges that Sheriff Lopinto deprived her of her rights to the Westbank Expressway and Veterans Boulevard properties by acting against her ownership interests, and that he did so by filing the acts of correction – to reflect ownership in the name of Jefferson Parish – without any notice to Shear or other due process. These are cognizable claims. Thus, Sheriff Lopinto's Rule 12(b)(6) motion to dismiss must be denied.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Sheriff Lopinto's motion to dismiss, partially dismiss, or strike (R. Doc. 11) is DENIED.

New Orleans, Louisiana, this 14th day of January, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE